UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Ecliff John Pesnell,<br>*Debtor* | ) <br>) <br>) <br>) <br>) | Case No. 11-10657 Section "B"<br><br>Chapter 7 |
| Vanessa Johnson Gueringer,<br>*Plaintiff* | ) <br>) <br>) <br>) <br>) <br>) <br>) <br>) | |
| Ecliff John Pesnell,<br>*Defendant* | ) <br>) | Adv. Proc. No. _____ |

## COMPLAINT

NOW INTO COURT, appearing through undersigned counsel, comes VANESSA JOHNSON GUERINGER, creditor of debtor, ECLIFF JOHN PESNELL, who seeks to have her claims against debtor deemed non-dischargeable under 11 U.S.C. § 523(a)(2) and who respectfully represents as follows:

### Jurisdiction

1.

Debtor, Ecliff John Pesnell ("Pesnell"), filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") on March 2, 2011.

2.

On August 30, 2011, Pesnell filed a Motion to Convert Chapter 13 Case to Chapter 7. On September 2, 2011, the Court ordered the proceeding converted to liquidation under Chapter 7 of the Bankruptcy Code. (P-35). The bankruptcy case is still open in this District.

3.

This is an adversary proceeding in which Plaintiff, Ms. Gueringer, is objecting to the dischargeability of Pesnell's indebtedness to her, pursuant to 11 U.S.C. § 523(a)(2) based on Pesnell's fraudulent acts associated with repair work to Hurricane Katrina related damage to Ms. Gueringer's home.

4.

This adversary proceeding, which seeks the determination of the dischargeability of a particular debt, is a "core" proceeding under 28 U.S.C. § 157(b)(2)(I). Therefore, this Court has jurisdiction over this adversary proceeding as "arising under Title 11" pursuant to 28 U.S.C. § 1334.

5.

This Court is the proper venue pursuant to 28 U.S.C. § 1409(a) because the debtor's bankruptcy case is pending in this District.

## The Parties

6.

Vanessa Johnson Gueringer, plaintiff, is a person of the full age of majority and resident of Orleans Parish and the State of Louisiana. Ms. Gueringer is a creditor of Pesnell and her Proof of Claim, No. 9, was timely filed against Pesnell.

7.

Ecliff John Pesnell, ("Pesnell"), Defendant, is a person of the full age of majority and a resident of the Parish of St. Bernard, State of Louisiana.

## Facts

8.

Ms. Gueringer's home located at 827 Tupelo Street, New Orleans, Louisiana 70117 ("827 Tupelo") was damaged as a result of Hurricane Katrina. 827 Tupelo is located in the Lower Ninth Ward area and is in the Holy Cross Historic District.

9.

In August, 2007, Ms. Gueringer entered into an agreement with Pesnell and Pesnell d/b/a Ecliff Home Improvements, ("Ecliff Home"), a business entity, and at all times pertinent hereto, doing business in the Parish of Orleans, State of Louisiana, to renovate the interior and exterior of her home.[1]

10.

Under the terms of the agreement, Pesnell was to supply all labor and material to renovate the interior and exterior of Plaintiff's home. Work included, but not limited to, redoing existing hardwood flooring; repair of original historic wooden windows; plumbing repairs; air conditioning and heating units; electrical work; installation of new tile flooring in kitchen, hall and den including all subflooring; installation of new kitchen cabinets and counters; trim work throughout the house; painting; replacement of existing cypress weatherboards; and repair/replacement of vinyl siding. The parties agreed that the work was to start in August, 2007.

11.

Although Pesnell clearly knew from the scope of the work agreed to that the amount of the agreement to repair Ms. Gueringer's house was worth in excess of Seven Thousand Five Hundred dollars ($7,500.00), he failed to reduce the agreement to writing contrary to the stated provisions of La. Rev. Stat. 37:2175.1.[2]

---

[1] Pesnell apparently moved to the New Orleans area after Hurricane Katrina from New York where he was also worked as a contractor.

[2] Pesnell admits that he had an unwritten agreement with Ms. Gueringer for the work at 827 Tupelo. (Def's Resp to

12.

In early January, 2008, Ms. Gueringer decided that she needed to reduce the parties' agreement to writing in order to track and record the work performed and/or not performed by Pesnell. Pesnell signed part of this written agreement on January 14, 2008. (Exhibit 1, in globo).

13.

As part of their agreement, Ms. Gueringer made an initial payment of Three Thousand dollars ($3,000.00) directly to Pesnell on or about August 6, 2007. As directed, Ms. Gueringer has made several subsequent payments to Pesnell for work performed totaling the amount of Sixty-Three Thousand Nine Hundred dollars ($63,900.00). (Exhibit 2, in globo).

14.

Pesnell and Ecliff Home performed work at 827 Tupelo until approximately late January 2008 and then abandoned the project. To date, the work is still not complete and continues as needed.

15.

Knowing that Ms. Gueringer would only hire licensed workers at her home, Pesnell knowingly falsely and/or misleadingly represented directly to Ms. Gueringer that he was a licensed home improvement contractor for the State of Louisiana as defined by La. Rev.Stat. 37:2150 et *seq.*

16.

The Louisiana State Licensing Board for Contractors confirmed in a letter dated September 18, 2009 that neither Pesnell nor Ecliff Home have ever been licensed or registered as home improvement contractors in the State of Louisiana including at the time of the commencement of work in August, 2007 or at any time during the subsequent period of work at 827 Tupelo.

Interrog. No. 3, Resp. to Req. for Prod. No. 3 – Exhibit 16).

(Exhibit 3).

17.

Additionally, under state law home improvement contractors are required to hold Workers' Compensation Insurance. La. Rev. Stat. 37:2175.2(C).

18.

Pesnell never provided Ms. Gueringer with documentation of such insurance coverage.

19.

Ms. Gueringer explicitly relied on Pesnell's fraudulent representations when she agreed to let him repair her home. Her home is in a historic district in the City of New Orleans and all renovations, especially to the exterior of the house, are governed by various restrictions.

20.

At the time of their agreement and throughout their work at 827 Tupelo, Pesnell and Ecliff Home falsely and/or misleadingly represented to Ms. Gueringer that Ecliff Home was a business entity properly licensed and insured in the City of New Orleans and the State of Louisiana.

21.

Pesnell and Ecliff Home were not registered as any business entity with the Louisiana Secretary of State at the time of the commencement of work in August, 2007 or at any time during the subsequent period of work at 827 Tupelo. (Exhibit 4, in globo).[3]

22.

Pesnell and Ecliff Home knowingly failed to follow the provisions of La. Rev. Stat.

---

[3] From the Louisiana Secretary of State Website available at: http://www.sos.louisiana.gov/tabid/819/Default.aspx (Search under entity name 'Pesnell' and "Ecliff Home Improvement"). Furthermore, Pesnell states in his response to Ms. Gueringer's Interrogatory No. 4 that "Ecliff Home Improvement is not a corporation, neither a partnership nor a LLC. I Ecliff Pesnell am the sole and only owner of Ecliff Home Improvement." (Def's Resp to Interrog. No. 4 – Exhibit 16). (See also Def's Resp to Req. for Prod. No. 10 – Exhibit 16 "Ecliff Home Improvement has only one owner Ecliff Pesnell and has no organization papers of any kind.").

37:2175.1 in contracting with Ms. Gueringer by their failure to contract in writing, failure to state their home improvement contractor registration number, failure to obtain the signature of all parties, failure to have a detailed description of the work to be done, and a specified amount agreed to for the work.

23.

By above said agreement, Pesnell agreed to assist Ms. Gueringer in her seeking funds through the Historic Building Recovery Grant Program which is administered by the State of Louisiana, Division of Historic Preservation. Ms. Gueringer has repeatedly requested from Pesnell receipts, invoices, cancelled checks, etc. necessary to allow her to seek reimbursement from this program for work Pesnell performed. Ms. Gueringer has also requested that Pesnell and Ecliff Home complete the required paperwork for this program. Despite repeated assurances, Pesnell refused to assist Ms. Gueringer. (Exhibit 5, in globo)[4].

24.

Ms. Gueringer specifically requested and demanded that all of the electrical work to be performed by Pesnell at her home be conducted by an electrician properly licensed in the City of New Orleans and/or State of Louisiana. Pesnell stated to Ms. Gueringer that he was not an electrician but assured her he would hire one properly licensed.

25.

After the electrical work was completed and electrical problems were discovered, Ms. Gueringer discovered that the electrical work was not performed by a Louisiana licensed electrician and in addition Pesnell installed used electrical materials in her house causing potential

---

4 A letter dated April 22, 2009 to Historic Building Recovery Grant Program, their response dated April 30, 2009 and Ms. Gueringer's response dated May 12, 2009 corresponding to Pesnell and Ecliff Home Improvement's failure to provide documentation to Ms. Gueringer to meet the requirements of the HBRGP Grant.

fire hazards.[5]

26.

Pesnell knew that the person he hired to perform electrical work at Ms. Gueringer's house was not licensed and intentionally stated to Ms. Gueringer that he was licensed knowing that she would not allow an unlicensed person to perform this work in her home.[6]

27.

Ms. Gueringer repeatedly requested that Pesnell and Ecliff Home complete the work and/or satisfactorily repair items at her home but to no avail.

28.

Ms. Gueringer did not discover any of the fraudulent actions of Pesnell and Ecliff Home until well after he abandoned the job.

29.

The following acts of Pesnell towards Ms. Gueringer both prior and throughout his work at her home constituted fraud and/or gross misrepresentation:

A. Continuous misrepresentation to Ms. Gueringer that Pesnell and Ecliff Home were licensed home improvement contractors in the State of Louisiana;[7]

B. Falsely and fraudulently representing that Pesnell and Ecliff Home were licensed to do business in the State of Louisiana;[8]

---

5  Pesnell's electrical work has so far resulted in flickering light, sparking and blown fuses.

6  Pesnell admits that the electrician he hired is not licensed to work in the State of Louisiana.  (Def.'s Resp. to Interrog. No. 15 and Resp. to Admissions No. 33 – Exhibit 16)

7  Pesnell admits that neither he nor Ecliff Home had any licenses with the Louisiana State Licensing Board for Contractors as required.  (Def.'s Resp. to Admissions. No. 1, 2, 3, 4, 5, 6, 7, 8 – Exhibit 16)

8  See Footnote No. 3.

C. Falsely and fraudulently representing that Pesnell and Ecliff Home were properly insured in the State of Louisiana;

D. Falsely and fraudulently representing to Ms. Gueringer that he would only hire a licensed electrician to perform electrical work at Ms. Gueringer's home;[9]

E. Intentionally and knowingly failing to follow City of New Orleans Building Codes including failure to obtain proper permits;[10]

F. Falsely and fraudulently representing to Ms. Gueringer that he would repair the wooden windows in her home under the provisions of the Historic Building Recovery Grant Program which is administered by the State of Louisiana, Division of Historic Preservation and that he would assist her with obtaining a grant;

G. Intentionally failing to contract with Plaintiff as per the provisions of La. R. S. 37:2175.1 *et seq.*;[11] and

H. Intentionally and fraudulently using old and/or used electrical parts and panel which resulted in several electrical shorts and burned circuits.

30.

Furthermore, the work performed by Pesnell and Ecliff Home is shoddy and was completed in an unworkmanlike manner. Their negligent, unworkmanlike and unprofessional acts and omissions include, but are not limited to the following:

---

9  See Footnote No. 6.

10  Pesnell admitted that he obtained no permits for work performed.  (Def.'s Resp. to Req. for Prod. No. 13 – Exhibit 16)

11  See Footnote No. 2.

A. Improper installation of new tile floors in kitchen, breakfast nook, den and hallway causing many tiles and grout to crack;

B. Improper installation of sub-flooring including using insufficient thickness of the subfloors causing floors to be unlevel;

C. Failure to properly stain and seal wood floors in living room;

D. Failure to replace rotted sills/joists under the house;

E. Failure to properly level house;

F. Failure to install two (2) new wooden windows in den, instead repairing them improperly which caused water leakage and damage;

G. Use of inferior and/or used items in the repair of home particularly wooden windows, electrical items and kitchen cabinets;

H. Failure to properly paint and caulk repaired wooden windows;

I. Failure to install glass kitchen cabinet doors and install cabinet shelving;

J. Improper installation of kitchen cabinet hardware leaving holes in doors;

K. Improper installation of staircase steps to second floor bedroom;

L. Failure to repair and install front exterior door; and

M. Failure to properly caulk in bathrooms causing mold to be present.

31.

Due to the aforementioned fraudulent actions of Pesnell and Ecliff Home, Ms. Gueringer has suffered damage to her home. She has obtained several estimates for repairs caused by Pesnell's work and has also mitigated some of his damages.

32.

Ms. Gueringer has obtained an estimate from Cager & Associates, LLC to repair the ceramic tiles, hardieboard and grout work in the kitchen area 2009 resulting from the work performed by Pesnell for a cost of three thousand four hundred seventy-five dollars ($3,475.00). (Exhibit 6).

33.

Ms. Gueringer has obtained an estimate from Davie Shoring, Inc. to repair the foundation in the kitchen area required due to the work performed and/or abandoned by Pesnell. This work includes a new sill, joists and piers at a cost of seven thousand two hundred dollars ($7,200). (Exhibit 7, in global).

34.

Ms. Gueringer has obtained an estimate from GalCan Electric to replace the used electrical panel and other electrical work due to Pesnell's fraudulently using used materials for a cost of one thousand two hundred fifty dollars ($1,250). (Exhibit 8).

35.

Ms. Gueringer has obtained an estimate from Nola Floors to replace substandard ¼" subflooring installed by Pesnell in the kitchen and replace with proper ¾" subfloor for a cost of one thousand nine hundred forty-two dollars and fifty cents ($1,942.50). (Exhibit 9).

36.

To date, Ms. Gueringer has incurred costs from Keston Home Improvement to

replace/repair window panes, sashes and track/weight systems and repaint two windows for two hundred thirty-two dollars ($232.00). (Exhibit 10).

37.

Due to the continuing electrical issues caused by the aforementioned fraudulent actions of Pesnell and Ecliff Home, Ms. Gueringer hired C-N-M Contracting & Developing Service, LLC to repair her home. To date, she has paid C-N-M Contracting the sum of two hundred thirty-three dollars and thirty-eight cents ($233.38) and has purchased materials for these repairs in the sum of one hundred ninety dollars and eighty-four cents ($190.84). This total is four hundred twenty-nine dollars and twenty-two cents ($429.22). (Exhibit 11, in globo).

38.

The agreement between Ms. Gueringer and Pesnell to repair her home should be null and void in that Defendants were not licensed home improvement contractors under the provisions of La. R.S. 37:2175.2.[12]

39.

Since the agreement is null and void, Pesnell is not entitled to the sums paid to them by Ms. Gueringer. Pesnell should be limited to no recovery whatsoever, or alternatively, limited to merely the actual cost of the labor and material provided.[13]

40.

On September 14, 2009, Ms. Gueringer filed a petition against Pesnell and Ecliff Home alleging breach of contract; unworkmanlike performance; performance of construction work

---

12 Pesnell admits that he is an unlicensed home improvement contractor under the laws of Louisiana. (Def.'s Resp. to Interrog. No. 1, 14; Prod. Of Doc. No. 2; and Req. for Admissions No. 1, 2, 3, 4, 5, 6, 7, 8 – Exhibit 16).

13 Louisiana courts have held contracts executed by unlicensed contractors in violation of the state licensing law null and void and that unlicensed contractors may only be entitled to unjust enrichment claims or possibly no recovery at all. Alonzo v. Chifici, 526 So.2d 237 (La. App. 5 Cir. 1988), writ denied, 527 So.2d 307 (La. 1988); Hazberg v. John Bailey Contractor, 435 So.2d 580 (La. App. 3d Cir. 1983), writ denied, 444 So.2d 1245 (La. 1984).

without a license; failure to adhere to City of New Orleans Building Codes; and Louisiana Unfair Trade Practices and Consumer Protection Act[14] claims in Civil District Court for the Parish of Orleans and was assigned case number 2009-9701. (Exhibit 12).

41.

In the Notice of R.S. 51:1401 Complaint Letter from Attorney General to Pesnell dated September 22, 2009, Pesnell and Ecliff Home are notified of possible violations of La. R. S. 51:1401 *et seq.*, the Unfair Trade Practices Act and Consumer Protection Law. (Exhibit 13).

42.

Pesnell and Ecliff Home filed an Answer with affirmative defenses on June 25, 2010. (Exhibit 14). Subsequently, Ms. Gueringer propounded various discovery requests. (Exhibit 15, in globo).

43.

After several attempts to have Pesnell respond, Ms. Gueringer filed a Motion to Compel Discovery which was heard on November 12, 2010. The District Court granted her Motion and ordered Pesnell and Ecliff Home to respond. On that same date, counsel for Pesnell and Ecliff Home was allowed to withdraw from the case. Several weeks later, Pesnell responded to discovery. (Exhibit 16, in globo).

44.

Pesnell filed for relief under Chapter 13 of Title 11 of the United States Code on March 2, 2011.

45.

In his Chapter 13 filing, despite representing himself in the on-going litigation with Ms.

---

14 Note that the Louisiana Unfair Trade Practices and Consumer Protection Act could make Ms. Gueringer eligible for treble damages.

Gueringer, Pesnell knowingly failed to list Ms. Gueringer as a creditor, failed to list the pending lawsuit Ms. Gueringer had filed against him and failed to give Ms. Gueringer notice of the Chapter 13 filing.

46.

By complete chance, Ms. Gueringer's counsel discovered Pesnell's Chapter 13 bankruptcy filing and on June 22, 2011 filed a timely Proof of Claim against Pesnell.

47.

After several objections to confirmation of his Chapter 13 plan, Pesnell, on August 30, 2011, filed a Motion to Convert Chapter 13 Case to Chapter 7. On September 2, 2011, the Court ordered the proceeding converted to liquidation under Chapter 7 of the Bankruptcy Code.

### Count 1: Non-dischargeability under § 523(a)(2)

48.

Pesnell was able to enter into the agreement to repair her home and obtained money from Ms. Gueringer through his actions and misrepresentations constituting fraud.[15]

49.

At the time of contracting, Pesnell falsely and intentionally represented to Ms. Gueringer, *inter alia*, that he was a licensed contractor under the laws of Louisiana, that both he and his company were licensed to do business under the laws of Louisiana, that he was a competent and qualified contractor, that he would perform quality repairs and improvements to her home that would meet various code requirements, that he would hire a licensed electrician under the laws of Louisiana, that he would assist her to obtain a grant under the Historic Building Recovery Grant

---

15 Pesnell admits to an agreement with Ms. Gueringer to repair her home and receiving money for his work. See Pesnell's Answer ¶ 5, 6 - Exhibit 12; Def.'s Resp. to Interrogatory No. 3,5,6, 8,10,16 and Def's Resp to Admissions – No. 9 – 22, 27 – 30, 32 – Exhibit 16.

Program which is administered by the State of Louisiana, Division of Historic Preservation, that he intended to complete the work contracted for, and that he complete the work contracted for in a timely fashion.

50.

At the time that Pesnell made all of the above representations, he knew that they were false and he intentionally deceived Ms. Gueringer for his own financial benefit and enrichment.[16]

51.

Ms. Gueringer would not have hired Pesnell and Ecliff Home to repair her damaged home if she had known that they were not properly licensed by the State of Louisiana. Ms. Gueringer lives in a historic district and insisted on requiring all repairs to be performed by licensed and competent workers. Pesnell and Ecliff Home's work resulted in possible violation of building codes and structural defects.

52.

Ms. Gueringer justifiably relied on Pesnell's misrepresentations when she agreed to fully pay him for his services. Pesnell explicitly knew that he had failed to perform the services which he both contracted with Ms. Gueringer and received full payment for.

53.

Ms. Gueringer has sustained further losses due to the fraudulent actions of Pesnell to

---

[16] Pesnell admits that neither he nor Ecliff Home had any licenses with the Louisiana State Licensing Board for Contractors as required under Louisiana law. (Def.'s Resp. to Admissions. No. 1, 2, 3, 4, 5, 6, 7, 8 – Exhibit 16). Pesnell admits that the electrician he hired was not licensed to work in the State of Louisiana. (Def.'s Resp. to Interrog. No. 15 and Resp. to Admissions No. 33 – Exhibit 16). Pesnell admitted that he obtained no permits for work performed at Ms. Gueringer's home. (Def.'s Resp. to Req. for Prod. No. 13 – Exhibit 16). Pesnell admits that neither he nor Ecliff Home is licensed to do business in Louisiana. (Def's Resp to Interrog. No. 4 – Exhibit 16). (See also Def's Resp to Req. for Prod. No. 10 – Exhibit 16 "Ecliff Home Improvement has only one owner Ecliff Pesnell and has no organization papers of any kind."). Pesnell admits that he hired an unlicensed electrician to work at Ms. Gueringer's home. (Def's Resp to Admissions No. 33 – Exhibit 16). He also admits that no business records were kept for both the work at 827 Tupelo Street and in general for Ecliff Home. (Def's Resp to Interrog. No. 6, 8, 12; Resp. to Req. for Prod. No. 3, 4, 5, 6, 10, 11, 12 – Exhibit 16).

include, but not limited to, the continuing repair and mediation of her home[17], payments made to Pesnell for repairs performed unworkmanlike, and the intentional violations of the Louisiana Unfair Trade Practices and Consumer Protection Act committed by Pesnell that could entitle Ms. Gueringer to treble damages.[18]

54.

Because the actions and omissions set forth above constitute false pretenses, false representations, or actual fraud, Pesnell's liability to Ms. Gueringer is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2).

WHEREFORE, Plaintiff, Vanessa Johnson Gueringer, respectfully prays that this Court enter judgment in her favor and against Defendant, Ecliff John Pesnell, holding that the debt owed by Ecliff John Pesnell be excepted from discharge as to Debtor under 11 U.S.C. § 523(a)(2).

Respectfully submitted,

SOUTHEAST LOUISIANA LEGAL SERVICES

BY: /s/Joseph D. Hebert, III
JOSEPH D. HEBERT, III, Bar No. 18943
1010 Common Street, Suite 1400A
New Orleans, Louisiana 70112
Telephone: (504) 529-1000, ext. 232
Fax: (504) 596-2241
Email: jdhebert@slls.org

Attorney for Vanessa Johnson Gueringer

---

[17] As of this filing, Ms. Gueringer has paid approximately the amount of $661.22 for mediation at her home. To date, Ms. Gueringer has estimates for further repairs and mediation in the amount of $13,867.50

[18] See Exhibit 13.

**PLEASE SERVE:**

Ecliff John Pesnell

Through his attorney of record:

David S. Moyer
13551 River Road
Luling, La 70070